99  379
112  275
99  379
f122  554

99  379
132  244

# Birmingham Trust & Savings Co. v. Louisiana National Bank.

*Bill in Equity to compel a Transfer of Stock upon the Books of a Corporation.*

1. *Cashier of bank; notice to him is notice to the corporation.*—Notice received or knowledge acquired by the cashier of a bank, while engaged in the transaction of business, in accordance with the general usage and practice of banking institutions, and within the general apparent line of his duty and authority as cashier, is notice to and knowledge of the bank.

[Birmingham Trust & Savings Co. v. Louisiana National Bank.]

2. *Dealings with agent; secret instructions and limitations.*—One who deals with an agent or officer of a corporation within the scope of the apparent powers of such agent or officer, is not affected by secret instructions of the corporation to him, or secret limitations, which may have been placed upon the power of such agent.

3. *Transfer of stock as collateral security; notice thereof.*—The power to negotiate loans being expressly conferred by charter upon a Trust & Savings Company, if the cashier of such company, in negotiating a loan for a customer, and in the course of the collection of the proceeds of such loan, acquires knowledge and receives notice of the pledge of shares of the capital stock of such company as collateral security, such knowledge and notice is imputed to the company.

4. *Same.*—The knowledge thus imputed to the company is binding upon and controls it in subsequent transactions with such borrower, though conducted by different officers after the former cashier's death, so long as the shares of stock remain in the hands of the transferree.

5. *Lien of a corporation on the shares of the corporation; subordinate to prior pledge.*—When a cashier of a Trust and Savings Company, in the negotiation of a loan, and the collection of the proceeds thereof, acquires knowledge and notice of the pledge of shares of its capital stock by a stock-holder. such knowledge or notice is imputable to said company, and it can not, under section 1674 of the Code. assert a lien on the shares of stock so pledged, for the security of a debt to it, subsequently contracted by said stock-holder.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on January 8, 1892, by the Louisiana National Bank against the Birmingham Trust & Savings Company, and W. C. Ward, as administrator of the estate of John B. Boddie, deceased.

On April 25, 1889,John B. Boddie, a resident of Birmingham, Alabama, borrowed $25,000, from the Louisiana National Bank, a corporation regularly organized under the National Banking laws, and having its place of residence in New Orleans, Louisiana, and executed his note, payable six months after date, to said Louisiana National Bank, and pledged as collateral security for the payment thereof 300 shares of the capital stock of the Birmingham Trust & Savings Company, a corporation duly organized under the laws of Alabama, and having its place of business in Birmingham, Alabama. The negotiation of this loan was made by and with the assistance of M. G. Hudson, the cashier of the Birmingham Trust & Savings Company, and also with the co-operation of the book-keeper of said company. On the maturity of this note it was renewed by said Boddie, and Hudson, the said cashier, wrote the written part of said note and endorsed in his own hand-writing on the back of said note the pledge of 300 shares of stock, as collateral security. When this note matured Boddie, having sold 50 shares of the pledged stock at a premium, made a payment

on said note of $5,000, the proceeds of said sale, and again executed a note to the Louisiana National Bank for $20,000, with the pledge of the remaining 250 shares of stock endorsed thereon. Before the maturity of this last note, the said Boddie and Hudson, the cashier, and Seixas the broker, through whom the loan was made in New Orleans, died. W. C. Ward was appointed the administrator of the estate of John B. Boddie, deceased, and Hudson was succeeded by J. M. Davidson, as cashier of the Birmingham Trust & Savings Company.

On March 31, 1890, the said John B. Boddie became indebted to the Birmingham Trust & Savings Company for over $21,000, and as collateral security for the payment of the note executed by him evidencing such indebtedness, Boddie transferred a large number of stocks and bonds in other corporations. At different times subsequent to this date, said Boddie contracted additional indebtedness to said Trust and Savings Company, and to secure each debt thus contracted, transferred stocks and bonds as aforesaid. The note for $20,000, executed by said Boddie to the Louisiana National Bank, not being paid at maturity, the said bank demanded of the Birmingham Trust & Savings Company that a transfer be made on its books of that part of its capital stock which had been previously pledged to said bank by said John B. Boddie. This demand was refused, the said Trust & Savings Company claiming that the said Boddie was indebted to it, and to secure such indebtedness claimed a lien on the capital stock so pledged to the Louisiana National Bank. Thereupon the present bill was filed, in which the complainant alleged the facts stated above, and prayed that the Birmingham Trust & Savings Company be compelled to enter on its books a transfer of the stock pledged to said bank by said Boddie; that the claim and lien of complainant by reason of such transfer be decreed to be superior to the lien set up by the Trust & Savings Company, and that a reference be had before the register to state an account of the amount due the complainant by the estate of John B. Boddie, and that the amount so found be decreed to be a prior lien on the stock so pledged.

The defendants in their answer, and by the evidence introduced in their behalf, set up the defense that, under section 1674 of the Code, the Birmingham Trust & Savings Company had a lien on the stock pledged to the Louisiana National Bank, by reason of the indebtedness of Boddie to said Trust & Savings Company, and that it had no notice of the transfer of said stock to the Louisiana National Bank;

that although Hudson, as cashier, may have had notice of the transfer, as alleged in the bill, it was in his individual capacity, and had never been communicated to the officers of the said Birmingham Trust & Savings Company, nor was it known to the cashier who succeeded Hudson. Such other facts as are necessary to a full understanding of the decision in this case, are sufficiently stated in the opinion.

On the final submission of the cause, the chancellor decreed that the complainant was entitled to the relief prayed for, and ordered a reference accordingly. The respondent, the Birmingham Trust & Savings Company, now brings this appeal, and assigns this decree of the chancellor as error.

GILLESPY & SMYER, and HEWITT, WALKER & PORTER, for appellant.—A knowledge by Hudson of the transfer of the stock was not notice to the Trust & Savings Company. He being the agent, notice to bind his principal must have been acquired while he was actually engaged in the transaction of his duties as such agent.—*Goodbar, White & Co. v. Daniel*, 88 Ala. 590; *Wheeler v. McGuire*, 86 Ala. 406; *McCormick & Richardson v. Joseph & Anderson*, 83 Ala. 401; *Frenkel v. Hudson*, 82 Ala. 162; *Reid v. Bank of Mobile*, 70 Ala. 199; *Whelan v. McCrary*, 64 Ala. 329; *Hinton v. Insurance Co.*, 63 Ala. 488; *Pepper & Co. v. George*, 51 Ala. 190; *Mundine v. Pitts' Admr.*, 14 Ala. 84; *Terrell v. Bank*, 12 Ala. 502; *Lucas v. Bank*, 2 Stewart, 321. The burden is upon the Louisiana National Bank to show that Hudson, in his official capacity, acquired knowledge of the unrecorded pledge.—*Barker v. Bell*, 37 Ala. 354; *Hightower v. Rigsby*, 56 Ala. 126; *Lambert v. Newman*, 56 Ala. 623; *Wynn v. Rosette*, 66 Ala. 517; *Gilman v. R. R. Co.*, 72 Ala. 566; *Barton v. Barton*, 75 Ala. 400; *Stickney v. Adler*, 91 Ala. 198. Under section 1674 of the Code, the lien of the Trust & Savings Company attached *eo instanti* with the creation of the debt to it by Boddie, and the statute is itself notice to the world that there was a lien in favor of the corporation, immediately upon the contraction of such debt.—*Colt v. Barnes*, 64 Ala. 108; *Dallas Co. v. Timberlake*, 54 Ala. 410; *Ex parte Barnes*, 84 Ala. 540; Jones on Liens, § 379; *Morton & Bliss v. N. O. & S. Ry. Co.*, 79 Ala. 617; *A. G. S. R. R. Co. v. S. & N. R. R. Co.*, 84 Ala. 582; *Morgan v. United States*, 28 L. C. P. Co. (U. S.) 1050; *Insur. Co. v. Cullom*, 49 Ala. 558. The knowledge of the pledge by Hudson was not pertinent to any transaction in which he was representing the Trust & Savings Company, and it was not, therefore, his duty to communicate his knowledge of such pledge, and hence his knowledge was no notice

to the Trust & Savings Co.— *Terrell v. Branch Bank*, 12 Ala. 505 ; Angel & Ames on Corporations, § 305 ; *Mundine v. Pitts*, 14 Ala. 90 ; *Frenkel v. Hudson*, 82 Ala. 162 ; *Farmers & Citizens Bank v. Payne*, 25 Conn. 444 ; s. c., 68 Amer. Dec., 362 ; *Westfield Bank v. Cornen*, 37 N. Y. 320 ; *Congar v. Chicago R. R. Co.*, 24 Wis. 160 ; *Bierce v. Red Bluff Hotel Co.*, 31 Cal. 161 ; *Second National Bank v. Curren*, 36 Iowa, 559 ; *Hood v. Fahnestock*, 8 Watts (Pa.) 489 ; *Bracken v. Miller*, 4 W. & S. (Pa.) 192 ; *Lawrence v. Tucker*, 7 Greenleaf, (Me.) 195 ; *Winchester v. Railroad*, 4 Md. 231 ; Ewell's Evans on Agency, pp. 229, 230, 231 ; Morse on Banks & Banking, (3d Ed.) § 104 ; *Bank of U. S. v. Davis*, 2 Hill, (N. Y.) 451 ; Kent's Commentaries, Vol. 2, p. 836 (note) ; *Fairfield Savings Bank v. Charl*, 39 Amer. Rep. 320 ; Story on Agency, (Bennett's Ed.), § 140.

W. R. HOUGHTON, *contra.*—The cashier of a bank has authority to bind it in consummating a transfer of its stock. *Cecil National Bank v. Watsontown Bank*, 15 Otto 217. See notes to same case book 56, L. C. P. Co., p. 1039, *Everett v. United States*, 6 Port. 166 ; *Br. Bank at Huntsville v. Steele*, 10 Ala. 915 ; *Reid v. Bank ef Mobile*, 70 Ala. 199-211 ; 1 Am. & Eng. Encyc. of Law, p. 421 ; 1 Morse on Bank, § 104 ; *Ib.* § 166 ; 1 Morawetz on Corp., § 540 *b* ; *Ib.* 540 *c* ; *Trenton Banking Co. v. Woodruff*, 2 N. J. Eq. 117 ; *Holden v. N. Y. & Erie Bank*, 72 N. Y. 286-293. The fact that Hudson actually participated in pledging the stock, his knowledge and notice thereof, was a knowledge and notice to the Trust & Savings Company, and this knowledge could not be affected by the fact that Hudson died.— *Trenton Banking Co. v. Woodruff*, 2 N. J. Eq. 117 ; *Cleveland Woolen Mills v. Sibert*, 81 Ala. 140 ; 1 Morawetz, Corp., § 540 *b*. The Trust & Savings Co. can not repudiate the act of its cashier, after having acted within the apparent authority invested in him.— *Young & Son v. Lehman, Durr & Co.*, 63 Ala. 519 ; *Carter, Dunbar & Co. v. Lehman, Durr & Co.*, 90 Ala. 126.

STONE, C. J.—The controlling, if not the sole inquiry in this case is, whether the Birmingham Trust & Savings Company, has a lien on the shares of its capital stock, the subject-matter of controversy, to secure the payment of the debts contracted with it by Boddie, the original holder and owner of the stock. The certificates were issued to him, and he remains registered as owner and holder on the books of the company. The question is, will the asserted lien prevail over his prior pledge of the stock to the appellee, to

secure the payment of a debt contracted on the faith of the pledge?

The common law regards shares of stock in private corporations as personal property, capable of alienation or descent in any of the modes by which that species of property may be transferred. Thus regarding such shares, a lien or equity in favor of the corporation to charge them with a debt due from the shareholder, would not be implied. Where the rights of third persons, accruing by purchase, or pledge from the shareholders, accrue, the recognition of such lien or equity would find no sanction in the rules of the common law. It discountenances all secret liens or trusts, as tending to fraud, to the embarrassment of trade, and to insecurity in the safe and speedy transfer of property.—1 Jones on Liens, § 375; Ang. & Ames Corporations, § 355; Cook on Stockholders, § 521. There is, however, much of equity and justice in such a lien, growing out of the relations which exist between the corporation and its shareholders, and it has become a general legislative policy to confer it either by a general law, applicable to all corporations, or by a provision in the charters of particular corporations. As between the shareholder and the corporation, and all others than *bona fide* purchasers without notice, a by-law or rule of the corporation may very naturally and reasonably create such lien. This proposition is supported by the weight of judicial authority.—Cook on Stockholders, § 552; *Cunningham v. Ala. Life Ins. & Trust Co.*, 4 Ala. 652.

The statutes declare, "Shares or interests in the stock of private corporations are personal property, transferable on the books of the corporation in such manner as is required by the by-laws or by the rules and regulations of the corporation." It is made the duty of every private corporation to require transfers of its stock to be made or registered on its books. And all transfers, hypothecations, mortgages, or other liens, of and on the stock, if not so made or registered, are invalid as to *bona fide* creditors, or subsequent purchasers without notice. The stock is the subject of levy and sale under attachment or execution, as is other personal property; and on the stock, the corporation has a lien for any debt or liability incurred to it by the shareholder, before notice of a transfer, or of a levy thereon. (Code, §§ 1669–74).

So far as the statute declares the shares personal property, it is simply affirmative of the common law.—Ang. & Ames Corporations, § 557. The requirement that a transfer of them must be made or registered on the books of the

corporation, does not prohibit a transfer in other modes, or render a transfer otherwise made absolutely invalid. It is invalid only as to the particular parties mentioned in the statute. A transfer not made or registered on the books of the corporation may not pass the legal title. But it is not intended to establish a rule applicable only to this particular species of property, prohibiting the creation therein of equities binding the legal title, or requiring that at all times, the legal and equitable title must be united in the same person. When such equities are created, the corporation is bound to regard them from the time it receives notice of their existence.—*Duke v. Cahawba Navigation Co.*, 10 Ala. 82; *P. & M. Mutual Ins. Co. v. Selma Savings Bank*, 63 Ala. 585; *Campbell v. Woodstock Iron Co.*, 83 Ala. 351; *Union National Bank v. Hartwell*, 84 Ala. 379; *Winter v. Montgomery Gas Light Co.*, 89 Ala. 544. It is the protection of *bona fide* creditors, and of subsequent purchasers, the statute contemplates; and the protection of these, only in the event there is want of notice of a prior transfer, hypothecation, mortgage or lien.

The lien which the corporation can assert and enforce against a prior transfer of the stock, though the transfer may create only an equity, binds the legal title of the shareholder, by the very terms of the statute. Like the protection extended to *bona fide* creditors, or subsequent purchasers, it is dependent on a want of notice of the transfer, if the debts or liabilities were incurred by the shareholder. The lien being created by statute, is limited in operation and extent by the terms of the statute, and can arise and be enforced only in the event and under the facts provided for in the statute. If there is a levy on the stock, or a transfer of it, subsequent to the incurring of a debt or liability to the corporation by the shareholder, the levy or transfer is subordinate to the corporation's lien. But if the debt or liability does not precede the levy or transfer, the lien is subordinate, and must yield, unless the corporation dealt with the shareholder without knowledge or notice. Having knowledge or notice, in fair dealing, the corporation could not extend credit to the shareholder, relying upon the lien to displace whatever of right the levy or transfer may have conferred.

The pledge to the appellee preceded in point of time the extension of credit to Boddie, and the creation of the debts for the security and payment of which the Trust & Savings Company now attempts to assert a statutory lien on the stock. The material inquiry is, therefore, whether the com-

25

pany at and prior to the creation of the debt, is chargeable with notice of the pledge. The fact is undisputed, that Hudson, the cashier of the Company, at the time of the pledge, .had knowledge and notice of it, and was in fact, an active participator and agent in the creation of the debt it was intended to secure. And the fact is undisputed, that all the correspondence and intercourse the appellee had with him, were had in his official capacity and relation as cashier, and was not had with him in his private, individual capacity. Nor can it be disputed, that the correspondence, intercourse and dealing were in accordance with the general usage, practice, and course of business of banking institutions, and within the general apparent line of duty and authority of the cashier of such institution. He is the executive officer, held out to the public as having authority to act according to the general usage, practice, and course of business of such institutions ; and his acts and dealings within the scope of such usage, practice, and course of business, bind the corporation in favor of those dealing with him, not having other knowledge. Notice received, or knowledge acquired by him, while engaged in the transaction of business according to such usage and practice, is substantially notice to, and the knowledge of the corporation.—*Everett v. U. S. Bank*, 6 Port. 166 ; *Br. Bank v. Steele*, 10 Ala. 915 ; *Merchant's Bank v. State Bank*, 10 Wall. 650; *Case v. Bank*, 100 U. S. 454. The general rule, applicable alike to individuals and to corporations, is that the knowledge acquired, or the notice received by an agent, which will affect and bind the principal, must have been acquired or received by the agent doing some act within the line of his duty and authority. Whether as between Boddie and the Trust Company, the transaction in which Hudson was engaged, was the negotiation of the loan from the appellee to Boddie, or the collection for Boddie of the proceeds of the loan, is not material. It may or may not be within the usual scope of the business of a banking institution, to negotiate loans. The negotiation of loans is, however, a function and power expressly conferred by the charter on the Trust & Savings Company. The power existing, the negotiation becomes business of the company, which may be transacted as other ordinary business is transacted. It falls within the line of duty and authority entrusted to the cashier, as the executive officer to whom the management and transaction of the ordinary business of the company is intrusted.—1 Morawetz Corp., § 359, *et seq.* ; 2 Amer. & Eng. Encyc. of Law, 118. There is no other officer of whom the public at large would

so readily expect the exercise of such function and power; no other with whom it would so confidently deal in reference to its exercise. Whether there was a by-law, or a resolution of the board of directors, expressly imposing the duty, or delegating the authority, in the absence of knowledge or notice thereof, is not a matter of importance, when the rights and dealings of third persons are involved. Whoever deals with an agent, or officer of a corporation within the scope of the apparent powers of such agent or officer, is not affected by the secret instructions of the corporation, or the secret limitations, which may have been placed upon his power.—2 Morawetz Corp., § 593, *et seq.* Nor is it important whether it be true, or not true, that in no other instance than this, did Hudson ever negotiate a loan. If the negotiation of loans was within the scope of his authority and duty as cashier under the usages, practice and course of business of banking institutions, it was the right of the appellee to rely on this apparent authority in dealing with him in his official capacity.

If in his capacity of cashier Hudson negotiated, or aided in negotiating the loan for Boddie, and in the course of the negotiations acquired knowledge and received notice of the pledge, that knowledge was also acquired, and the notice also received, in the course of the collection for Boddie of the proceeds of the loan, and it can not be doubted that in making the collection he acted wholly for the company, and within the line of his duty and authority. There are but few functions of a banking institution more frequently excised, that that of making collections, especially at places distant from the locality of the bank. The collection, of necessity, is made through the medium of correspondence, and the conduct of its correspondence is surely, according to the usages and practice of banking institutions, within the line of the duty and authority of the cashier. The loan having been negotiated, a pledge of three hundred shares of the capital stock of the Trust & Savings Company was the required security for its repayment. Hudson attested the transfer of the certificates of stock, and they were forwarded to the appellee in an envelope bearing the stamp of the company. At the same time, the Trust Company, through Hudson, its cashier, drew upon Seixas, the broker in New Orleans, for $24,162.50, the net proceeds of the loan, remitting the draft to the appellee for collection, with instructions to collect and deposit to the credit of the company in the Whitney National Bank of New Orleans. The collection and deposit were made, of which the company

were promptly informed. On the same day, the certificates of stock were forwarded to the appellee, the draft was drawn, and Boddie was credited with the draft and debited on the books of the company with charges on account thereof—$62.50. Whatever may have been the knowledge acquired, or the notice previously received by Hudson in this particular transaction, by the collection from Seixas of the proceeds of the loan, he acquired full knowledge, and received full, actual notice of the pledge of the stock to the appellee. That knowledge and notice were the knowledge of and notice to the company. The collection of the money for Boddie was ordinary business of the company, and such business, according to the usage and practice of banking institutions, is transacted by and through the cashier. It is only through its officers and agents that a corporation acquires knowledge, or receives notice; and though knowledge acquired, or notice received by an officer or agent, while not engaged in transacting the business of the corporation, may not affect or be imputed to it, yet, if it is acquired or received while engaged in the sphere of his official duty and authority, the knowledge or notice becomes the knowledge of and notice to the corporation. Otherwise, knowledge and notice could never be traced to the corporation, and the utmost insecurity in dealing with it would follow. As against corporations, there are peculiar and urgent reasons for a stringent enforcement of the general rule, that knowledge acquired, or notice received by an officer or agent, within the scope of the agency, is deemed notice to the principal; as "the corporation can not see or know any thing except by the intelligence of its officers."—*Bank of Pittsburg v. Whitehead*, 36 Am. Dec. 186, notes.

It is insisted that although Hudson, in his relation and capacity of cashier, acquired knowledge and received notice of the pledge, the knowledge and notice is not imputable to the company to affect such transactions had with Boddie, which were conducted by other officers and agents subsequent to Hudson's death, and who were without such knowledge or notice. This insistence is founded in a misapprehension of the principles of law, and of its true theory. The knowledge and notice an agent acquires and receives in the transaction of the business of the principal, is not personal, pertaining to the agent only. The legal principle is thus tersely expressed: "Notice to an agent is notice to the principal."—Wade on Notice, § 672. And the theory of the principle is, that if the principal had in person transacted the business, he would have acquired the knowledge,

[Richmond & Danville R. R. Co. v. Trousdale & Sons.]

or received the notice the agent acquires and receives, and, therefore, is chargeable with such knowledge and notice.— *Sooy v. State*, 41 N. J. Law 400. And upon general principles of public policy, it is and must be presumed, that the agent communicates to the principal the facts of which he acquires knowledge or notice. If the communication is not made, it is the fault or neglect of the agent, which must be visited on the principal, rather than upon strangers dealing with the agent, within the scope of the agency.—Story on Agency, § 140. The Trust & Savings Company being chargeable with knowledge and notice of the prior pledge to the appellee, is not entitled to assert a lien on the stock for the security of the debts subsequently contracted by Boddie.

We find no error in the record, and the decree of the chancellor is affirmed.