# Bank of Florala v. American Nat. Bank of Pensacola.

### Bill to Enjoin Enforcement of Lien.

(Decided April 19, 1917.  75 South. 310.)

1. **Corporations; Lien on Pledged Bank Stock; Impairment by Subsequent Dealings.**—A bank's lien on stock of another bank, effected by a hypothecation brought to the notice of such other bank, could not be impaired by the subsequent dealings of the other bank with the pledgor.

2. **Banks and Banking; Notice to Bank Whose Stock was Pledged; Sufficiency of Evidence.**—In a bank's suit to enjoin another bank from foreclosing its statutory lien on shares of its stock, evidence held sufficient to show that the president of defendant bank had notice of the fact that the stock had been pledged to plaintiff bank.

3. **Corporations; Notice; Notice to Officer.**—The private individual knowledge of an officer of a corporation, acquired in the transaction of his own business, while dealing as if he had no official relation to the corporation, will not operate as notice to the corporation.

4. **Banks and Banking; Notice to Officer; Pledge of Stock.**—Where the president and director of a bank, whose stock was pledged by a stockholder to another bank, was an active officer and agent of the first bank, having duties to perform in respect to the business of the bank, and performing them at least in part, notice to him of the stockholder's pledge of the stock was chargeable to the bank; the ownership of the stock being prima facie within the scope and line of the president's duty and authority to know.

5. **Principal and Agent; Knowledge and Notice to Agent.**—Knowledge acquired or notice received by an agent to affect and bind the principal must have been acquired or received by the agent acting within the line and scope of his duty and authority, but the person communicating the notice need not wait until he can catch the agent acting about the particular business to which the notice relates, in order to charge his principal.

6. **Corporations; Transfer of Stock; Equities; Regard by Corporation; Statute.**—Code 1907, § 3471, providing for the registration of corporate stock transfers, contemplates only the protection of subsequent purchasers without notice of prior equities, and when such equities have been created by transfer, hypothecation, mortgage, or lien, the corporation is bound to regard them from the time it receives notice of their existence.

7. **Banks and Banking; Loans by Cashier to Himself; Statute.**—Loans made by the cashier of a bank to himself, and not submitted for approval to the board of directors nor the finance committee of the bank, were forbid-

[Bank of Florala v. American Nat. Bank of Pensacola.]

den by Acts 1911, p. 71, § 20, providing that no bank shall lend any money to any salaried officer, agent, or employee without the loan being submitted to and approved by the board of directors or finance committee.

8. **Banks and Banking; Ratification of Agent's Act.**—A bank could not ratify loans made to its cashier without at the same time ratifying the acts of the cashier in making them to himself.

9. **Banks and Banking; Cashier's Pledge of Stock; Notice.**—Where the cashier of a bank had pledged his stock therein to another bank, and, as cashier, he loaned his bank's money to himself without submitting the loans for approval to the board of directors or finance committee, and his bank, in the pledgee bank's suit to enjoin it from foreclosing its statutory lien on the cashier's stock, by its answer, with full knowledge of the facts, elected to hold the cashier to his obligations, and in virtue thereof claimed a lien on his stock, the cashier's bank was chargeable with notice of his pledge of his stock to the pledgee bank.

APPEAL from Covington Chancery Court.

Heard before Hon. O. S. LEWIS.

Bill by the American National Bank of Pensacola against the Bank of Florala and A. E. Mann to enjoin respondent bank from foreclosing its statutory lien upon certain shares of stock owned by Mann in the Bank of Florala. Decree for complainant and the respondent bank appeals. Affirmed.

W. O. MULKEY and WEIL, STAKELY & VARDAMAN for appellant. JONES & POWELL and WATSON & PASCO for appellee.

SAYRE, J.—The American National Bank of Pensacola filed the bill in this cause against the Bank of Florala and A. E. Mann, its former cashier, to enjoin the defendant bank from foreclosing its statutory lien on 16 shares of its stock, standing on its books in the name of Mann, and to enforce the complainant bank's lien on said shares of stock. The complainant bank claimed its lien by virtue of a pledge by Mann of his stock antedating his debt to defendant bank. The defendant bank based its lien on section 3476 of the Code, which gives corporations "a lien on the shares of its stockholders, for any debt or liability incurred to it by a stockholder, before a notice of a transfer or levy on such shares." There was no dispute about the existence or bona fides of the indebtedness claimed by either bank. The sole issue between the parties is one of priority. Mann's pledge to the Pensacola bank of his stock in the Bank of Florala was not noted on the transfer registry of the latter bank, and the controlling question in the cause is whether the defendant bank had notice otherwise of the pledge at the time of its several loans

to him. The cause being submitted in the court below for final decree on pleading and proof, decree was rendered for the American Bank of Pensacola, and the Bank of Florala has appealed.

It is clear on the evidence that Mann became indebted to the Pensacola bank on account of several loans negotiated by him in the years 1911 and 1912, and that to secure the same as they were made he pledged to that bank 40 shares of stock which he owned in the Bank of Florala. In December, 1914, the capital of the last-named bank having been depleted, there was a reorganization, one result of which was that Mann's 40 shares were reduced to 16, and these 16 were by the Bank of Florala issued and delivered to the Pensacola bank in lieu of the 40 which all along had been held by the latter as security for the debts of Mann negotiated as aforesaid and renewed from time to time. An objection was taken before the chancellor against the conclusion we have stated as to the dates of Mann's indebtedness to the Pensacola bank and the pledges to secure the same that they could not be proved by the books of the bank which were incompetent evidence of the facts. Counsel here "insist on" the objection to the books, though it can hardly be said that they have argued the question. Scant attention was paid to our rule (McDonald v. Carnes, 90 Ala. 147, 7 South. 919; Bolling v. Fannin, 97 Ala. 619, 12 South. 59) in the introduction of this evidence; but without regard to it, we are satisfied from the testimony of the witness Mann, Lamar, and West that Mann became indebted to the bank at Pensacola during the years 1911 and 1912—the more particular dates are not material—and that his stock was pledged for the security of his debts at their inception. The debts due from Mann to the Bank of Florala all date from 1913 and 1914. The brief for appellant states that the note of J. W. Bann, for $510, dated December 1, 1914, on which the defendant A. E. Mann became liable as indorser, evidenced as indebtedness that originated as far back as 1898. But it is very clear that there has been a mistake in the testimony of the witness Lanz, or in the stenograpric report of it, upon which this statement is based. The context of the witness' testimony bears this out. If, however, the isolated expression upon which the statement is based be accepted as reported, it is clear error, for the evidence shows without dispute, other than such contradiction as may be inferred from the statement in question, and overwhelmingly in any case, that the Bank of Florala was not organized until

1904, nor did Mann have official connection with the bank until 1911, and all these credits for which the bank claims a lien under the statute were extended by Mann, acting as cashier, to Mann the individual.

(1) Mann's hypothecation of his Florala bank stock with the bank at Pensacola was not noted on the former bank's stock book or transfer registry, as we have already said; but the Bank of Florala was chargeable with notice brought home through other channels to its officers and agents acting within the line and scope of their duty and authority, and the lien effected by the hypothecation thus brought to its notice could not be impaired by its subsequent dealings with the pledgor.—*Birmingham Trust & Savings Co. v. Louisiana National Bank*, 99 Ala. 379, 13 South. 112, 20 L. R. A. 600. West, director and president of the Bank of Florala from July, 1911, until November, 1914, knew from the time of the transactions in question that Mann had shares of stock hypothecated with the Pensacola bank. West lived in Florida, but the proof is that he visited the Bank of Florala on an average of once a month and spent several days on each visit. His testimony is:

"I knew generally of the transaction in the beginning, in talking with Mr. Lamar, who was president of the American National Bank, and in talking with Mr. Mann as cashier of the Bank of Florala."

(2-5) This evidence, and there is nothing to impeach its veracity, is quite sufficient, in our judgment, to show that West, as president of the Bank of Florala, had notice of the fact that Mann's stock in the bank had been pledged to the American National Bank of Pensacola. It is generally accepted doctrine that the private individual knowledge of the officer of a corporation, acquired in the transaction of his own business, while dealing as if he had no official relation to the corporation, will not operate as notice to the corporation.—*Bruce v. Citizens' National Bank*, 185 Ala. 221, 64 South. 82. As presirent and director, West was an active officer and agent of the appellant bank; not as active perhaps as he might or should have been, but an officer and agent who had duties to perform in respect to the business of the bank and in part at least performed them, and through him notice was chargeable to the bank. The communications between Lamar, West, and Mann on the subject of Mann's indebtedness to the bank at Pensacola, of which Lamar was at the

time president, and his pledge of his Florala bank stock to secure the same, concerned a matter in which the Bank of Florala was interested, viz. the ownership of its stock, and was prima facie within the scope and line of West's duty and authority at the time to know.   Notwithstanding it is the general rule, applicable alike to individuals and to corporations, that the knowledge acquired, or the notice received by an agent, which will affect and bind the principal, must have been acquired or received by the agent acting within the line and scope of his duty and authority, Judge Thompson has well observed in his work on Corporations, § 1647, that:

"There is no rule of law requiring the person communicating the notice to wait until he can catch the agent acting about the particular business to which the notice relates, in order to charge his principal.   If such were the rule, the cases would be very few indeed in which notice could ever be communicated by a stranger to a corporation."

And:

"As against corporations, there are peculiar and urgent reasons for a stringent enforcement of the general rule, that knowledge acquired, or notice received by an officer or agent, within the scope of the agency, is deemed notice to the principal; as "the corporation cannot see or know anything except by the intelligence of its officers.' "—*Birmingham Trust & Savings Co. v. Louisiana National Bank, supra.*

(6)  The state has provided by statute for the registration of stock transfers, but the statute (Code, § 3471) contemplates only the protection of subsequent purchasers without notice of prior equities, and when such equities have been created by transfer, hypothecation, mortgage, or lien, the corporation is bound to regard them from the time it receives notice of their existence.—. Id.   And so, by fair implication of evidence and by construction of law on the result of that evidence, the Bank of Florala had actual notice through its director and president West of Mann's pledge of stock with the complainant bank and in its subsequent dealings with him was bound to have regard to that fact.—*Hall & Brown Woodworking Machine Co. v. Haley Furniture & Mfg. Co.,* 174 Ala. 190, 56 South. 726.

(7-9)  The conclusion indicated above is to be sustained on another ground.   Consideration of the security of the statutory lien now insisted upon must be taken to have entered into the

[Traweek v. Hagler.]

several loans made by complainant bank to Mann, if they are now to be treated as loans. As before stated, Mann, as cashier, made these loans to himself. These loans were not submitted for approval to the board of directors nor to its finance committee. They were therefore forbidden by statute.—Acts 1911, p. 71, § 20. Hence the suggestion is, Mann, as to them, was not the agent of the bank. But the Bank of Florala by its answers and with full knowledge of all the facts has elected to hold Mann to his obligations thus assumed and in virtue thereof claims a lien upon his stock. It cannot ratify the loans without at the same time ratifying the act of Mann in making them. He was therefore the agent of the bank in and about these loans to himself, and it must be considered that he had in mind his previous pledge of stock to the bank at Pensacola. On these facts the Bank of Florala was chargeable with notice of Mann's previous pledge of his stock to the Pensacola bank.—*Tatum v. Commercial Bank & Trust Co.*, 193 Ala. 120, 69 South. 508, L. R. A. 1916C, 767. See, also, *Lilly v. Hamilton Bank*, 178 Fed. 53, 102 C. C. A. 1, 29 L. R. A. (N. S.) 558, and the note thereto.

For the reasons stated, we hold that the chancellor was correct in his decree granting relief to the complainant.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.