(99 South. 87)

### PEOPLE'S BANK v. MOBILE TOWING & WRECKING CO. (1 Div. 250.)

(Supreme Court of Alabama. Feb. 7, 1924.)

1. **Corporations ⊕169—Evidence held to show corporation did not acquire through its secretary constructive notice of treasurer's pledge of stock to bank.**

In a suit by a corporation to enforce its alleged prior lien under Code 1907, § 3476, on its shares of stock held by its secretary-treasurer and pledged to respondent bank without notice to complainant as alleged, in which the bank asserted notice by complainant of the pledge through complainant's acting secretary, evidence *held* to show that constructive notice of the treasurer's pledge of the stock to respondent bank could not be fastened on complainant through acting secretary's knowledge.

2. **Corporations ⊕426(1)—Corporation without power to lend money could not ratify loan made by secretary to himself.**

A corporation without power to lend money could not in any case nor by any sort of corporate action ratify loans made by its secretary to himself.

3. **Corporations ⊕312(3) — Embezzlements from corporation could not be given contractual character on theory of ratification.**

Where the unauthorized appropriations of complainant corporation's money by its treasurer to his own use were simple embezzlements, they could not be given a contractual character on any theory of ratification by complainant, whether expressed or implied.

4. **Corporations ⊕312(3)—Act of corporation in charging treasurer's embezzlement on its books as debt and its allegations held not waiver of tort.**

Act of complainant corporation, charging the amount of its treasurer's embezzlements on its books as items of indebtedness held not a waiver of their tortious quality or status, in a suit pursuant to Code 1907, § 3476, to enforce complainant's lien on its stock held by its treasurer and pledged to respondent bank, nor could such a waiver be predicated upon complainant's allegation of the original bill that the treasurer was indebted to complainant.

5. **Corporations ⊕165—Lien given corporation on shares of its stockholders covers debt not founded on contract.**

A lien given by Code 1907, § 3476, to a corporation on the shares of its stockholders before a notice of a transfer or levy on such shares is given for any debt or liability, and need not be indebtedness founded on contract.

6. **Corporations ⊕169—Evidence held to show corporation had neither actual nor constructive notice of shareholder's pledge of stock to bank.**

In a suit by complainant corporation seeking to enforce its lien, under Code 1907, § 3476, on its capital stock held by its treasurer, and alleged to have been pledged to respondent bank without notice to complainant, evidence *held* to show that complainant had neither actual nor constructive notice of the pledge to the bank.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Bill in equity by the Mobile Towing & Wrecking Company against the People's Bank and Harry T. Hartwell. From the decree the People's Bank appeals. Affirmed.

The bill of complaint was filed by the appellee, the Mobile Towing & Wrecking Company, to establish and enforce a stautory lien in its own favor on 45 shares of its capital stock issued to, and standing on its books in the name of, the respondent Harry T. Hartwell, its secretary and treasurer, and also one of its directors. The lien thus asserted is based upon allegations that Hartwell had charge of complainant's books and accounts from the time of its organization in July, 1907, until July, 1915, during which time, without the knowledge or consent of complainant, he converted to his own use moneys belonging to complainant, and thereby became liable to complainant in the sum of $58,052.06, exclusive of interest. It is alleged that since July 1, 1915, complainant has become indebted to Hartwell in the sum of $4,000, which has been applied on his said indebtedness, and that no other payment has been made on said liability. The stock in question was issued to Hartwell on November 12, 1907. The respondent, the People's Bank, is alleged to claim a lien on the stock.

The People's Bank answered the bill in substance as follows:

(1) On June 30, 1908, Hartwell was not indebted to complainant at all. From that date to July, 1915, Hartwell's conversions of complainant's moneys aggregated about $100,-000, but during that time he made sundry payments thereon, which, being credited on the earliest items of the debt, discharged all of Hartwell's indebtedness to complainant accruing during the first several years after 1908, so that the existing indebtedness dates from several years after July 1, 1908.

(2) In July, 1907, Hartwell borrowed $20,-000 from respondent bank, with the agreement that, when complainant company's capital stock was issued, 70 shares of it should be delivered to the bank as collateral security for that debt. The stock was issued to Hartwell on November 12, 1907, and was by him transferred in blank to the bank as such security. The said loan has been renewed from time to time, the renewal periods being generally for about 90 days; and, while some payments have been made thereon, it has never been reduced below $17,500, the amount still due, with interest from December 4, 1917.

Twenty-five shares of this stock were released by the bank about August 1, 1912, and since that time the remaining 45 shares have been held as collateral as aforesaid.

(3) Soon after said loan was made, and down to 1915, Hartwell began borrowing sundry large amounts from the bank, aggre-

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

gating in September, 1917, about $48,000, with an agreement that all collateral held by the bank then or afterwards should stand pledged for those additional debts.

(4) At the time of the accrual of the indebtedness now due from Hartwell to complainant it had notice of the prior pledge to, and hypothecation with, respondent bank of the said shares of stock, (1) through Hartwell himself, who was complainant's secretary and treasurer; and (2) through one Richard Spencer, who was duly authorized to perform all the duties of secretary for complainant, and who from the date of his appointment on October 17, 1907, did, in fact, as "acting secretary," perform many of the duties of secretary, the allegation being that Spencer knew of the several conversions of complainant's money by Hartwell as they occurred, and also knew Hartwell's pledge to the bank of the stock in question at or about the time it occurred, and before the accrual of complainant's indebtedness.

The answer is made a cross-bill, with a prayer for foreclosure of respondent bank's lien on the stock, with priority over complainant's claim.

On submission for final decree, the trial court decreed that both parties had the liens claimed, but that complainant is entitled to priority in the satisfaction of its indebtedness from Hartwell, and that respondent bank's lien is subordinate thereto.

The appeal is by the bank from that decree.

Stevens, McCorvey, McLeod & Goode, of Mobile, for appellant.

Notice to a corporation, once received, rests and abides with it, regardless of changes which thereafter may take place in the personnel of its agents or officers, or in their relation to the corporation. Tatum v. Comm. Bank, 193 Ala. 133, 69 South. 508, L. R. A. 1916C, 767; Hall Co. v. Haley Co., 174 Ala. 197, 56 South. 726, L. R. A. 1918B, 924; B. T. & S. Co. v. Bank, 99 Ala. 388, 13 South. 112, 20 L. R. A. 600. When an officer of a corporation is its sole representative in a transaction with such officer, knowledge of the officer is knowledge of the corporation. Bank of Florala v. Am. Nat. Bank, 199 Ala. 663, 75 South. 310. Although such transaction be unauthorized, if the corporation with full knowledge elects to hold the officer and claims lien upon his stock, the transaction is ratified. Bank of Florala v. Am. Nat. Bank, supra.

Smiths, Young, Leigh & Johnston, of Mobile, for appellee.

Notice to an officer of a corporation while acting for himself and in hostility to his company, is not notice to the company. Frenkel v. Hudson, 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736; Hall Co. v. Haley Co., 174 Ala. 197, 56 South. 726, L. R. A. 1918B, 924; Ala. West. R. R. v. Bush, 182 Ala. 113, 62 South. 89; Blount Co. Bank v. Harris, 200 Ala. 669, 77 South. 43. A corporation cannot ratify that which it has no power to authorize. Ala. Co. v. Tenn. Valley Bank, 200 Ala. 622, 76 South. 980; Steiner & Lobman v. Steiner Land & Lbr. Co., 120 Ala. 128, 26 South. 494. An election is not binding unless the party has received some benefit, or the other party has sustained some loss thereby. Register v. Carmichael, 169 Ala. 588, 53 South. 799, 34 L. R. A. (N. S.) 309; Hunnicutt v. Higginbotham, 138 Ala. 472, 35 South. 469, 100 Am. St. Rep. 45; Huntsville Co. v. Corpening & Co., 97 Ala. 681, 12 South. 295.

SOMERVILLE, J. The evidence in this case shows without dispute that the complainant company has a lien on the 45 shares of its capital stock issued to, and standing on its books in the name of, its debtor, Harry T. Hartwell. It shows also, without dispute, that the respondent bank has a lien on the same stock for a large indebtedness for which it was pledged by Hartwell. The question at issue between the parties is upon the priority of their respective claims.

Under Code, § 3476, "corporations have a lien on the shares of its stockholders, for any debt or liability incurred to it by a stockholder, before a notice of a transfer or levy on such shares." Under the statute, therefore, complainant's lien was superior to the lien of respondent, notwithstanding the latter's priority in point of time, unless complainant had notice of the pledge before the accrual of its lien. Bank of Florala v. Am. Nat. Bank, etc., 199 Ala. 659, 75 South. 310.

[1] On October 17, 1907, Richard Spencer was authorized, by resolution duly shown by the minutes, "to perform all of the duties of secretary." Spencer testified that his best recollection was that, when the $20,000 note of Hartwell to the bank fell due, he knew the stock was at the bank; and further, "I would state that I knew it when the note matured, or, if the note matured before the stock was issued, then I would say that I knew it when the stock was issued." On cross-examination he testified: "I can recollect that as soon as that stock was issued it was sent to the People's Bank"; and "Hartwell told me that as soon as this stock was issued he wanted it issued that way, that is, in two certificates for 35 shares, in order that he could give it to the People's Bank."

There is nothing in this, however, nor in any of Spencer's testimony, to show the circumstances under which he acquired his information, or under which Hartwell made the statement to him about the issuance of the stock. He testified that he and Hartwell were intimate friends, and that he attended to many of Hartwell's business transactions for him, and was in touch with his personal transactions with various banks;

and also that the certificates of stock issued to Hartwell were signed by Walsh, the president, and by Hartwell himself—that they were not signed by him (Spencer), and that he, as acting secretary, did not sign any stock till later on.

Under this testimony it would be straining inferences to conclude that Spencer acquired his information as to the pledging of this stock by Hartwell while in the discharge of his duties as secretary. Rather, the presumption is that he acquired it in and by virtue of his personal relations with, and service of, Hartwell. And, it must be noted, though Spencer was authorized to perform the duties of secretary he was not in fact the secretary, and did not supersede Hartwell, and was not, so far as appears, the keeper of the transfer book, and at that time was not issuing or signing stock certificates, if he ever did; hence it cannot be said that the ownership of stock was prima facie within the scope and line of his duty to know and record. Our judgment is that constructive notice of Hartwell's pledge of the stock cannot be fastened on complainant through the knowledge of Spencer. Hall, etc., Co. v. Haley, etc., Co., 174 Ala. 190, 56 South. 726, L. R. A. 1918B, 924.

The principle is stated in that case that a rebuttable presumption arises that an agent, who has acquired knowledge at any time bearing on the subject of his agency, which may affect the interests of his principal, has communicated his knowledge to his principal. But, as we have seen, this knowledge did not relate to the duties Spencer was performing at the time for his principal; and, apart from that, it clearly appears that he did not in fact make any disclosure to the president or other officer of the company.

[2-4] It is further insisted that Hartwell's own knowledge of the pledging of the stock by himself became constructively the knowledge of the company—the theory being that Hartwell's transactions were between the company and himself; that the company charged his commissions of its money on its books as debts due from him to the company, and charged in the original bill of complaint in this cause that Hartwell "was indebted to complainant" in the sum claimed; and that thereby complainant ratified and adopted the acts of Hartwell in the premises, creating contractual relations between him and the company, and constituting him as the agent of the company in those dealings with himself.

The authority cited in support of this theory of the case is Bank of Florala v. Am. Nat. Bank, etc., 199 Ala. 659, 75 South. 310. In that case, the controversy being identical with the one in the instant case—contrary to the provisions of the act of March 2, 1911 (Gen. Acts 1911, p. 71, § 20), the cashier of the Florala bank made loans to himself without submission to, or approval of, the board of directors or the finance committee. The bank, with full knowledge of the facts, elected to hold Mann to his obligations, thus ratifying the loans, as it had a right to do, and necessarily ratifying also the acts of the cashier in making them. And it was held that this made the cashier the agent of the bank in those transactions with himself, and charged the bank with imputed notice of the cashier's previous pledge of his bank stock to the complainant bank, which he must have had in his mind at the time.

That theory of notice cannot, however, be applied in this case for two reasons: (1) The complainant company had no power to lend money, and it could not in any case, nor by any sort of corporate action, ratify loans made by its secretary to himself. Ala. Red Cedar Co. v. Tenn. Valley Bank, 200 Ala. 622, 76 South. 980. Whereas, in the Florala Bank Case, supra, the bank, having the corporate power to make loans to its officers by the action of its board of directors, necessarily had the power by the same authority to ratify such loans, though made without the proper authority in the first instance. (2) Hartwell's unauthorized appropriations of complainant's money to his own uses were not loans to him by complainant in any sense of the word, but were in fact simple embezzlements. They cannot be given a contractual character upon any theory of ratification, whether expressed or implied. Certainly, charging the amounts of his embezzlements against Hartwell on complainant's books as items of indebtedness was not a waiver of their tortious quality and status. Nor can such a waiver be predicated upon the mere allegation of the original bill that Hartwell was "indebted" to complainant.

[5] In order to assert its statutory lien complainant was not bound to show a contractual indebtedness from Hartwell, since the lien is given for any debt or liability; and it may be noted that, before proceeding to a submission for final decree, complainant amended the bill of complaint by striking out the charge of indebtedness, and substituting the charge of unauthorized conversions of money as the basis of Hartwell's liability.

[6] The evidence does not reasonably satisfy us that complainant had notice of Hartwell's prior pledge of the stock to respondent bank, either actual or constructive, and our conclusion is that complainant's lien under the statute must be accorded priority over the lien of respondent bank.

Let the decree of the circuit court in equity be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.