## GARVY v. BLATCHFORD CALF MEAL CO.
### No. 7508.

Circuit Court of Appeals, Seventh Circuit.
May 2, 1941.

Wm. Lister and John J. Flynn, both of Chicago, Ill., for appellant.

Frederic O. Mason, of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff recovered a judgment against Blatchford Calf Meal Company for the amount of four dividends declared by the defendant on its preferred stock, which had been pledged to The Waukegan National Bank. To reverse the judgment defendant appeals.

There is no conflict as to the facts. The proofs showed that John W. Barwell was a stockholder of the defendant corporation. He became indebted to The Waukegan National Bank and at the time that bank closed, in June, 1931, it held his collateral notes secured by 261 shares of the preferred stock of the defendant corporation, which Barwell had endorsed in blank. He was also indebted to the City National Bank and Trust Company of Evanston and to secure that indebtedness he pledged other stock.

974

In June, 1933, the Evanston bank went into liquidation and one James M. Flinn became a member of its liquidating committee. At that time the defendant was indebted to both the Waukegan and Evanston banks, and by an agreement dated July 29, 1932, it deposited with the Evanston bank its note for $50,000 secured by a trust deed to secure its indebtedness to both banks. Thereafter the liquidating committee entered into an agreement with the defendant with the consent of one Ericson, the receiver of the Waukegan bank, whereby the Evanston bank advanced to the defendant additional working capital, and Flinn, as fiscal manager, was placed in charge of the defendant for the benefit of both banks. July 25, 1935, Flinn was elected president of the defendant corporation. Flinn, as fiscal manager and as president of the defendant corporation, knew that Barwell was indebted to the Waukegan bank and that he had pledged his preferred stock to secure his debt.

On October 21, 1936, February 23, 1937, December 9, 1937, and March 29, 1938, the defendant declared dividends on its preferred stock, the first of which was paid to Barwell and the last three were applied by the defendant to Barwell's indebtedness to it. Ericson knew that the 261 shares held by him as collateral for Barwell's notes stood on defendant's books in Barwell's name. He also knew that Barwell was indebted to defendant in excess of $5,000. He made no request to transfer the stock out of Barwell's name until June, 1938, at which time Ericson informed Flinn that he (Ericson) felt he should be getting the dividends being paid on the 261 shares. Shortly thereafter the stock was transferred on defendant's books to "Melvin B. Ericson, Receiver Waukegan National Bank, pledgee for John W. Barwell." August 22, 1938, plaintiff was appointed receiver of the Waukegan Bank in lieu of Ericson, deceased.

The case was heard by the court without a jury and the court found that before the defendant paid to Barwell the first dividend or to itself the last three dividends, it knew that Ericson, as Receiver of The Waukegan National Bank, held the 261 shares as pledgee to secure Barwell's four unpaid notes aggregating $17,900, and stated his conclusions of law. He was of the opinion that where a corporation has notice that shares of its stock have been pledged by a stockholder, it must, during the pendency of the pledge, pay to the pledgee all dividends declared, notwithstanding the fact that the pledgee has not caused the shares of stock to be registered in his name.

As grounds for reversal defendant's counsel contends that the directors of an Illinois corporation may fix a record date for the determination of shareholders entitled to receive payment of dividends, and argues that since the directors of the defendant corporation closed its books and fixed a record date for the determination of shareholders to receive payment of dividends, payment of such dividends to Barwell, the record owner of the stock, was justified (c. 32 § 157.29 Ill.Rev.Stat. 1939, p. 835).

It is true that the Illinois statute cited provides that the board of directors of a corporation may fix a record date for the determination of shareholders entitled to receive payment of dividends and that the shareholders on such date shall be the shareholders entitled to receive the payment of such dividend. Nevertheless, we are of the opinion, under the facts here appearing, that defendant's contention cannot be sustained.

In our opinion that statute, when applied to the facts in this case, is not decisive of the question now under consideration. Homestake Oil Co. v. Rigler, 9 Cir., 39 F.2d 40 was a case involving the construction of a Montana statute which provided that the delivery of a stock certificate of a corporation to a pledgee for value, shall be a sufficient delivery to transfer the title as against creditors, but that no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation. The facts were substantially as in our case. The plaintiff, a receiver of a bank, pledgee of certain stock, sued the defendant for the amount of the dividends declared upon the stock. The defendant had notice that the stock had been pledged. The court held that under the circumstances the statute (the Montana statute) had no application. See, also, First National Bank, etc. v. Wellborn, 237 Ala. 183, 186 So. 549; Bank of Florala v. American National Bank, 199 Ala. 659, 75 So. 310; Bradsher v. Taylor, 185 Ark. 1188, 46 S.W. 2d 9; and People's Bank, etc. v. Exchange

Bank, 116 Ga. 820, 43 S.E. 269, 94 Am. St.Rep. 144.

In our view the Illinois statute, when applied to the facts in this case, does not change the general rule that as between the pledgor and the pledgee of stock, dividends declared during the continuance of the pledge belong to the pledgee. This is true even if the pledgee fails to procure registration on the books of the corporation, provided the corporation has notice of the pledge. If the corporation has notice of the pledge, it will be liable to the pledgee if it pays such dividends to the pledgor.[1]

Counsel for defendant also makes the point that because plaintiff failed to have entered upon the corporation records notice of his intention to collect the dividends until after they were paid to Barwell, he waived whatever claim he might have had against the defendant.

Whether facts on which a claim of waiver is based have been proved, is a question for the trier of the facts, but whether those facts, if proved, amount to a waiver is a question of law. To constitute a waiver it is essential that there be an existing right, knowledge of its existence and an intention to relinquish it, and the burden of proof is upon the party claiming the waiver to prove that one charged to have waived the right knew of the fact that entitled him to the right.[2]

It does not appear that Ericson had notice or knowledge that the defendant had declared any dividends upon the stock in question until June, 1938. Nor was there evidence that defendant ever told Ericson of the declaration of any dividend, and the court found that there was no record in Ericson's office showing that Ericson had any actual or constructive knowledge of the declaration of those dividends prior to June, 1938. Under such a state of the record, we do not see how the plaintiff can be estopped from claiming the dividends.

The judgment of the District Court is affirmed.

---

[1] 7 R.C.L. § 268, p. 293; 18 C.J.S., Corporations, § 469b; National Bank of Commerce v. Equitable Trust Co., 8 Cir., 227 F. 526, 531; Fletcher's Cyc. of Corporations, vol. 6, § 3704; Railroad Credit Corp. v. Hawkins, 4 Cir., 80 F.2d 818, 823; Fairbank v. Merchants' National Bank, 132 Ill. 120, 132, 22 N.E. 524; Detroit Trust Co. v. First National Bank, D.C., 7 F.Supp. 117, 118.

[2] McMahel v. Smith, 277 Ill.App. 29, 35; 27 R.C.L. § 6, p. 910; Ferrero v. Knights, etc., 309 Ill. 476, 481, 141 N. E. 130; and Universal Gas Co. v. Central, etc., 7 Cir., 102 F.2d 164.