# Bruce *v.* Citizens National Bank.

## *Assumpsit.*

(Decided November 2, 1913.   64 South. 83.)

1. *Banks and Banking; Knowledge of Officers; Notice to Bank.*—In order for knowledge or information on the part of the agent to be binding on the principal, it must have been acquired by the agent within the scope of his duties while transacting the business of the principal; hence, information acquired by the officers of a bank in their private capacity is not notice to the bank.

2. *Bills and Notes; Holder in Due Course; Presumption.*—Under sections 5007, and 5014, Code 1907, every holder of a note is deemed to have taken it before maturity in good faith and for value without notice of any defect.

3. *Same; Actions; Defenses.*—The evidence examined and held insufficient to show that plaintiff was not a bona fide purchaser for value without notice.

4. *Fraud; Presumption.*—Fraud is never presumed but must be proven.

5. *Evidence; Opinion; Matters Directly in Issue.*—Where defendant was allowed great freedom in showing that the note had been obtained by fraud, and without consideration, it was not improper to

[Bruce v. Citizens National Bank.]

exclude his conclusions as to whether he ever received anything of value for the note.

6. *Appeal and Error; Record; Conflict.*—Where the record proper and the bill of exceptions differ in their recitals as to the rulings on demurrer, the record proper will govern.

7. *Same; Review; Questions Presented.*—The sufficiency of a plea cannot be raised on appeal, where no exception to its sufficiency was raised in the trial court.

8. *Same; Harmless Error; Evidence.*—Where the evidence was such that the jury could not have found otherwise than as they did, the refusal to the appellant of certain special charges was harmless.

APPEAL from Clay County Court.

Heard before Hon. D. H. RIDDLE, Special Judge.

Assumpsit by the Citizens' National Bank of Lineville against John S. Bruce. Judgment for plaintiff, and defendant appeals. Affirmed.

The pleas were:

(1) The general issue.

(2) Failure of consideration.

(3) Failure of consideration.

(4) "The note which forms the foundation of this suit was procured from defendant for one share preferred stock to be issued by the Atlantic Furniture & Lumber Company of which the cashier of plaintiff bank was secretary and treasurer, and defendant avers that before said note was executed that plaintiff, through its cashier, fraudulently and falsely represented that said subscription in settlement of which the note was given would make the said Atlantic Furniture & Lumber Company a going concern, and in a safe condition, and defendant further avers that the directors of plaintiff bank made the same representations to defendant, and in this manner induced defendant to execute the note which is the foundation of this suit, and defendant avers that, at the time said representations were made, the said Atlantic Furniture & Lumber Company, was hopelessly insolvent, and was due plaintiff's bank a

[Bruce v. Citizens National Bank.]

large sum of money, and that the said false and fraudulent representations were made to defendant by the said officer and director of plaintiff's bank for the purpose of saving said bank in the matter of the large indebtedness due it by the said Atlantic Furniture & Lumber Company, and defendant avers that said stock has never been issued by the secretary and treasurer who is also the cashier of plaintiff's bank, and defendant avers that the fraud practiced upon him by the cashier and director of plaintiff bank in securing said note from him which he averred was fraudulent and wholly without consideration, are acts which are chargeable to plaintiff bank, and defendant says plaintiff participated in said fraud, and should not recover from defendant on the note which forms the foundation of this suit."

(5) "Defendant says that the consideration for which said note was given has wholly failed, in this, that said note was given in payment for one share preferred stock in the Atlantic Furniture & Lumber Company, a corporation, organized under the laws of Alabama, and that two of directors of said plaintiff bank, to wit, W. D. Mitchell and R. A. Gaines, who were also directors of the said corporation, came to defendant and solicited him to buy one share of said alleged preferred stock in said corporation; at first, defendant refused to purchase any of said stock, whereupon the two directors named stated that they and M. M. Eppes, cashier of the Citizens' National Bank, and also secretary and treasurer and director of said corporation, had investigated the condition of said corporation, and that the same was solvent, and that the said corporation owed certain debts which must be paid, among which was a debt to the Citizens' National Bank, and the two first-named directors further represented to defendant that, if the stockholders of the corporation would increase their

stock to about $4,200 in the aggregate, it would be able to move its stock of furniture, realize on indebtedness due it, pay what it was due, and be saved from bankruptcy, that, if defendant would take $100 of said preferred stock upon which they would guarantee a dividend of 8 per cent. per annum, defendant would save his stock of $1,000, which he had in said corporation, that it would be better to pay $100, even if he was not able to buy said stock, than to lose $1,000 of stock defendant already had in said corporation, and before defendant executed said note for said stock he saw the cashier of plaintiff bank, and also secretary and treasuser and director of said corporation, and that the cashier made the same representation to defendant as made by the said two other named directors above detailed; and defendant says that he relied upon said representation, and executed the note which is the foundation of this suit in payment of one share of the alleged preferred stock of said corporation, and that for said note said Eppes, as secretary and treasurer, agreed to issue to defendant one share preferred stock in said corporation, with a guaranty of 8 per cent. dividend per annum; and defendant further says that, at the time said note was alleged to have been discounted to plaintiff's bank, the said Eppes was both cashier of the bank and secretary and treasurer of the corporation, and knew that no stock or other consideration had been given for said note, and said directors knew that no consideration or stock had been given or received by defendant for said note; and defendant further says that the transaction whereby plaintiff bank bought or discounted the note in suit was had with said Eppes, or when Eppes was present as cashier and director of plaintiff bank, and that at the same time said Eppes was also secretary and treasurer of said corporation, and, that at the time said

note was discounted to plaintiff bank, Eppes, cashier and director of said bank, and secretary, treasurer, and director of said corporation, knew that said stock had not been issued to the bank, and that both he and said above-named directors both of plaintiff bank and said corporation knew or were in possession of facts which, if followed up, would cause them to know that, at the time they procured defendant to execute said note, said corporation was hopelessly insolvent, and that said representations made to defendant in order to induce him to sign said note were false and fraudulent, and that in executing said note defendant relied entirely upon said representation, and defendant says that said false and fraudulent representations were made to defendant to enable plaintiff bank to realize on the indebtedness that said corporation was then due said bank. Wherefore, defendant says," etc.

WALTER S. SMITH, for appellant. It is always permissible to show the real consideration of a note.— *Reader v. Helms,* 57 Ala. 440. The consideration of a written contract is generally open to inquiry.—*Booth v. Fire Engine Co.,* 118 Ala. 369; *Davis v. Snyder,* 70 Ala. 315; *Folmar v. Siler,* 132 Ala. 297. The transferee is charged with the notice of fraud, defective title or illegality known to his transferor.—Daniel's Negotiable Instruments, 790-802. Notice to the agent is notice to the principal.—*City N. Bank v. Jeffreys,* 73 Ala. 195; *Mobile County v. Felrath,* 67 Ala. 187; 151 U. S. 607; 11 Wall 256; 11 Wheat. 78.

CORNELIUS & CORNELIUS, for appellee. The facts showing the failure of consideration should be alleged in the plea.—*Meyer v. Black,* 139 Ala. 174; *Powell v. Crawford,* 110 Ala. 294; *Sims v. Herzfelt,* 95 Ala. 145.

The replications contained the necessary averments of want of knowledge or notice and were good.—*Ala. Nat. Bank v. Halsey,* 109 Ala. 196. The witness cannot be permitted to state a conclusion of law from the facts. —*Loeb v. Flash,* 65 Ala. 527; *Miller v. Mayer,* 124 Ala. 434; *Hames v. Brownlee,* 63 Ala. 277. A principal is not charged with notice to his agent unless acquired in the scope of his duties while transacting the business of the principal.—*Cole v. Bir. Min. Ry.,* 143 Ala. 427; *C. of Ga. v. Joseph,* 125 Ala. 313; *Pearce v. Smith,* 126 Ala. 116; 151 U. S. 607. The presumption is that one who acquires a note is the holder in due course if it is acquired for value before maturity.

SAYRE, J.—Plaintiff bank, appellee, sued as transferee of a promissory note for $100 made payable to the Atlantic Furniture & Lumber Company, a corporation. The record proper and the bill of exceptions differ in their recitals of the rulings on demurrers to the several pleas filed. We are concluded by the record proper. On demurrer, plea 3 was held insufficient, leaving on the file a so-called plea of the general issue, about which no question has been raised, and pleas 2, 4, and 5. Plea 2 was that the note in suit was wholly without consideration. The evidence showed without dispute that this defense was untenable in fact, unless it was proved by the evidence offered in support of the charge of fraud, to be noticed, and it may be dismissed from consideration. Those questions which need to be considered as bearing upon the merits of the controversy between the parties to this record were brought into the case by two pleas: Plea 4, alleging in substance that defendant had been induced to execute the note by the fraud of plaintiff; and plea 5, saying in its introductory sentence that "the consideration for which said note was given has

wholly failed in this," and then following up this des-
ignation of the purpose and effect of the plea with aver-
ments designed to show fraud in procuring the execu-
tion of the note and conjunctively that the bank in the
negotiation of the note had notice of the fact that no
certificate of stock had been issued to defendant.   To
these pleas, which the reporter will set out, plaintiff re-
plied by a special replication, alleging that the instru-
ment sued upon was a negotiable note and that it had
purchased the same for a valuable consideration before
maturity and without notice of the facts alleged in the
pleas. ·Demurrer to this replication was overruled,
and that ruling is assigned for error.   The points taken
by the demurrer, wherein it was specific as the statute
requires a demurrer to be, were that the replication fail-
ed to deny that the officers of the bank had notice of the
fraud alleged in the pleas, and failed to aver that the
note was acquired "in the regular course of business,"
meaning by this last, as we may assume, that the note
was not shown to have been acquired in due course, as
the customary phrase is.

Applied to the replication as an answer to plea 4,
the demurrer hardly had any apt meaning, and, though
nominally it sought to test the replication as a reply to
both pleas 4 and 5, we suppose its real purpose was to
point out defects in the replication as an answer to
plea 5.   We have so treated the demurrer.   It is well set-
tled that, in order for the knowledge or information of
an agent to be binding upon the principal, it must be
acquired by the agent while transacting the business of
his principal in the scope of his duties.   It is not the
private individual knowledge of the officer of a corpor-
ation, acquired in the transaction of his own business,
while dealing as if he had no official relation to the cor-
poration, that will operate as notice to the corporation.

—*Terrell v. Branch Bank,* 12 Ala. 502; *Reid v. Bank,* 70 Ala. 199; *Central of Georgia v. Joseph,* 125 Ala. 313, 28 South. 35. We are inclined to think this plea did not measure up to the rule laid down by the authorities in charging notice to the plaintiff. But that question was not raised in the court below and is not presented for review. The replication denied notice in a way to meet every requirement of the law, and also excluded by necessary inference the implied conclusion of the plea that the bank as a corporate entity was originally responsible for the fraud charged to its officers. In connection with the complaint it showed that plaintiff was the holder, the owner, of the instrument sued on, a negotiable promissory note. Every holder of such a note is deemed prima facie to be a holder in due course, which means that he is deemed to have taken it before maturity in good faith and for value, having at the time no notice of any infirmity in the instrument or defect in the title of the person negotiating it.—Code 1907, §§ 5007, 5014. The replication stated plaintiff's right and title in a more circumstantial manner and was a new assignment of the cause of action alleged in the complaint.—*L. & N. v. Walker,* 128 Ala. 368, 30 South. 738. It stated an unassailable title in plaintiff. As for any ground of demurrer assigned, the replication was good.

The jury found all issues for the plaintiff. On the evidence we think they might have been instructed by the court so to find. The furniture company was in financial straits. Its creditors, the bank included, were pressing the collection of their debts. Mitchell, Gaines, and Eppes, who were stockholders and directors in both the bank and the furniture company, the last named being also cashier of the bank and secretary and treasurer of the furniture company, advised—it may be conceded that he requested—defendant to execute the

note in suit for the face value of one share of the capital stock of the furniture company as part and parcel of a scheme by which the company was to dispose of an issue of preferred stock to its stockholders and so raise funds with which to tide over its difficulties.  At a meeting of the stockholders, informally called it may have been, Thomas G. Watts, a witness for defendant, and who was the vice president and general manager of the company, stated his judgment that, if $4,200 of additional stock could be disposed of within a week or ten days, the company could avoid bankruptcy.   Mitchell, Gaines, and Eppes were then appointed agents of the meeting to investigate the affairs of the company with a view to a determination of the feasibility and wisdom of the scheme.   They found in favor of the scheme, and on the next day reported that it would enable the company to continue its operations.   Afterwards they stated to defendant, who seems not to have been present at the meeting and was averse to any further investment in the company, that the stock issue would save the company and advised and requested him to subscribe.   Defendant testified that they also guaranteed that thereafter the company would pay 8 per centum on its stock. As a guaranty this was, of course, worthless.  At best for defendant it was nothing more than an emphatic expression of opinion, to be considered, however, as a circumstance in connection with any evidence tending to support the charge of fraudulent purpose.   Defendant gave the note in suit.   Other stockholders gave notes for stock to the amount of $4,100.   These notes were subsequently discounted by the bank; $900 of the proceeds being used in paying the company's debt to the bank, the rest put to the company's credit.   The substance of the fraud charged is that these persons knew that the company was hopelessly insolvent, meaning in

the circumstances that with the addition to its resources of the funds to be provided by the stock issue it would still be insolvent, and that they advised and requested defendant to subscribe for one share of stock of the face value of $100, with the real purpose of saving the bank the indebtedness due to it from the company. If there was fraud committed with the purpose alleged, it reached beyond defendant. It had in contemplation that the whole or a large part of the stockholding body of the furniture company should suffer. Some, if not all, the persons charged subscribed to the issue of stock and gave their notes. The charge lacks verisimilitude. But conceding that such a scheme might be used in the perpetration of fraud and that the persons named may be held to have been acting as agents of the bank for the collection of the debt due to it, and hence that the bank was responsible for what they did, still the charge failed in the proof, for an integral necessary part of the charge, indeed the gist of it, was that these so-called agents of the bank made representations concerning the condition and prospects of the furniture company which were false in fact and fraudulent because they were known to be false, i.e., these agents knew the company was hopelessly insolvent. But there was no rational support for the charge in the evidence. For aught appearing these agents made their statements in perfect good faith. For aught appearing the fact they were alleged to have known did not exist, and without that fact there was no substantial ground, nothing more than a pure speculation, on which to plant a finding that there was a fraudulent purpose behind the statement that the proposed issue of stock would save the company. True, four months later the company was put into involuntary bankruptcy, but on account of what debts was not shown. That fact did not justify

an inference that four months earlier these agents knew that the stockholders' notes would not save the company, nor that the company, with that help, would still be hopelessly insolvent. Fraud must be proved. It may rest in reference—commonly does—but men cannot be convicted of corruption on mere suspicion; the inference of fraud must itself rest upon evidence of facts from which the court can see that an inference is justifiable.

Our conclusion on consideration of the evidence offered for defendant, aside from that offered for plaintiff, is that the jury could not have found otherwise than they did on the charge of fraud, and that with that finding all defenses failed; that the refusal of the special charges requested by defendant could not have affected the substantial rights of the parties; and that by consequence their refusal was error without injury, though some of them may have asserted propositions of law correct in the abstract.

There was an exception to the court's ruling that defendant could not ask a witness, the defendant himself, whether he had ever received anything of value for his note. That he had received the furniture company's promise to issue stock was not denied. That promise was a valuable consideration in law if enforceable. The entire course of defendant's effort in the cause was to show that the consideration had failed or was of no value because of the fraud alleged and the failure to deliver the certificate of stock. Defendant was not restrained, except in the instance noted, in the adduction of his evidence. That evidence showed fully the facts upon which he based his charge that the stock was valueless. In these circumstances the question evinced a purpose on the part of defendant to state his conclusion from the facts—a conclusion more properly to be

drawn by the jury if in the end the evidence had reasonably admitted of different inferences, or, as the event showed, a conclusion that might well have been drawn by the court against defendant.

A correct result was reached in the trial court, and the judgment will be affirmed.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.