(104 So. 758)

MALONE v. MERCHANTS' & FARMERS' BANK et al. (4 Div. 209.)

(Supreme Court of Alabama. May 28, 1925.)

1. Banks and banking ⊚⟞⟞⟞116(1)—Knowledge of managing officer of bank of pledge of stock as collateral held knowledge of bank, and bank thereby waived its lien on stock as against pledgee.

The knowledge of managing officer of bank, at time he pledged his stock as collateral for personal loan from plaintiff, *held* imputable to bank, notwithstanding his personal interest in transaction, and as to plaintiff, who was not informed of bank's lien on officer's stock under Code 1923, § 7000, bank thereby waived its lien.

2. Banks and banking ⊚⟞⟞⟞42—As regards waiver by bank of lien of stock pledged as collateral for loan, question of usury held immaterial.

As regards question of estoppel or waiver by bank of lien on stock, as against one to whom it was pledged as collateral for loan, question of usury is immaterial.

Appeal from Circuit Court, Bullock County; J. S. Williams, Judge.

Bill in equity by G. H. Malone, as administrator of the estate of E. L. Marbury, deceased, against the Merchants' & Farmers' Bank and others, From a decree for respondents, complainant appeals. Reversed, rendered, and remanded.

Farmer, Merrill & Farmer, of Dothan, for appellant.

Respondent bank waived its lien upon the stock involved. Fourth & First Nat. Bank v. Huntsville Bank & Trust Co., post, p. 403, 104 So. 761; First Nat. Bank v. Huntsville Bank & Trust Co., post, p. 236, 104 So. 760; Code 1923, § 7000; Mobile Mut. Ins. Co. v. Cullom, 49 Ala. 558; Bank of Florala v. Am. Nat. Bank, 199 Ala. 659, 75 So. 310; Tatum v. Comm. B. & T. Co., 193 Ala. 120, 69 So. 508, L. R. A. 1916C, 767.

J. D. Norman, of Union Springs, for appellees.

Appellee had a lien upon the stock of its stockholder. Code 1907, § 7000. Notice to Rainer of transfer of stock to Marbury was not notice to the bank, since Rainer was acting in his individual capacity. Bank of Florala v. Am. Nat. Bank, 199 Ala. 662, 75 So. 310; People's Bank v. Mobile T. & W. Co., 210 Ala. 678, 99 So. 87; Bruce v. Citizens' Bank, 185 Ala. 227, 64 So. 82; Reid v. Bank of Mobile, 70 Ala. 211; Frenkel v. Hudson, 82 Ala. 158, 2 So. 758, 60 Am. Rep. 736; Whelan v. McCreary, 64 Ala. 319; Hall & Brown Co. v. Haley F. & M. Co., 174 Ala. 190, 56 So. 726, L. R. A. 1918B, 924; Birmingham, T. & S. Co. v. Louisiana Nat. Bank, 99 Ala. 380, 13 So. 112, 20 L. R. A. 600.

⊚⟞⟞⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

GARDNER, J. This cause in equity is prosecuted by the administrator of the estate of E. L. Marbury, deceased, for the foreclosure of a pledge of collateral security consisting of 25 shares of stock in the Merchants' & Farmers' Bank at Union Springs, Ala. This stock was pledged to said Marbury by J. H. Rainer, Jr., in April, 1919, for security of a cash loan of $2,500, the balance remaining due on said loan being renewed in October, 1920, by the execution of two notes—one for $2,400, and the other for $96. At the time of these transactions, Rainer was vice president of the Merchants' & Farmers' Bank, owning 340 shares of its capital stock, and indebted to said bank in the sum of $5,890.12. Subsequently Rainer became indebted to the bank in a much larger sum, and the bank seeks to enforce its lien upon this stock, including the 25 shares pledged to Marbury. Section 7000, Code 1923.

Rainer died in 1921, and his administrator is a party to the suit. Marbury's administrator seeks first to have his claim to the 25 shares so pledged to him by Rainer declared superior to the lien of the bank upon the theory that the bank has waived its lien or is estopped to enforce the same. Failing in this, the bill is filed in the alternative upon the further theory that in any event the lien of the bank is superior to Marbury's only to the extent of the indebtedness due by Rainer to the bank at the time Marbury's collateral was pledged—being the sum of $5,890.12—the bank then having notice of the loan and pledge by Rainer of this stock as collateral to Marbury, and, therefore, not entitled to superiority of its lien as to any subsequent indebtedness. Section 7000, supra. Under this theory complainant seeks to have all of Rainer's stock sold and the said debt of Rainer to the bank of $5,890.12 first paid—the stock other than complainant's 25 shares being entirely sufficient for that purpose—and thereby have exonerated the stock so pledged to Marbury.

Upon the theory first above mentioned, that of a waiver of the lien on the part of the bank, we are of the opinion the recent cases of Fourth & First Nat. Bank of Nashville v. Huntsville Bank & Trust Co. (Ala. Sup.) 104 So. 761,[1] and First Nat. Bank of Chattanooga v. Huntsville Bank & Trust Co. (Ala. Sup.) 104 So. 760,[2] present term, are controlling in complainant's favor.

At the time of the transaction involved in the last-mentioned case, Hutton was cashier of the Huntsville bank, while in the first-mentioned case he was vice president; but whether in the one capacity or the other, he was shown to be the bank's general manager, "in a sense, its alter ego." He was the only officer of the bank who had knowledge of the transactions, and notwithstanding his personal and individual interest, it was held that the knowledge acquired by Hutton under these circumstances was notice of the facts imputable to the bank.

We think the instant case is brought within the influence of the principle recognized in these authorities, and those therein cited.

The evidence has been read and carefully considered by the court in consultation, and we are persuaded thereby that J. H. Rainer, Jr., who occupied the position of vice president, was in fact the "managing officer" (to use the language of the bill) of the bank, and in a sense therefore its alter ego. The time of the president of the bank was largely consumed by his own private affairs, and while there was a loan committee, we are rather impressed that it functioned only in an advisory capacity. While there was subsequently some qualification of his testimony, we are rather impressed that the following statement of the cashier on cross-examination is fairly respresentative of the situation:

"J. H. Rainer, Jr., was the man in charge of the bank, and made the loans for and on behalf of the bank whether the loan was small or large, and had authority to make these loans; but the loan committee was an advisory board upon whom Mr. Rainer could call whenever he deemed it advisable or fit."

The indebtedness of Rainer to the bank consisted of loans made by the bank to himself, and although there appear in the record written approvals of these loans by the loan committee, the cashier testified that these approvals were actually made after the loans had been made and entered on the books, though his further testimony was to the effect there was some discussion of them before they were made. It is evident, however, that as to these transactions with himself as well as with the outside world, Rainer was the managing officer of the bank with controlling power and influence. Such a general manager is held to possess "authority and powers * * * coextensive with the powers of the corporation itself, and he has authority to do any act on its behalf which is usual and necessary in the ordinary course of the company's business * * * or which he is held out to the public as having authority to do, and may exercise all the powers which the board of directors could exercise or authorize under the same circumstances in the general management of the corporation business." Sheip v. Baer, 210 Ala. 231, 97 So. 698.

Such was the relation of Rainer to the bank, when in April, 1919, he borrowed from Marbury $2,500, and pledged these 25 shares of stock as collateral.

[1] This is not the ordinary case of principal and agent, where notice to the agent acting in his individual capacity is held not imputable to the principal, but is one where the managing officer, the alter ego of the

---

[1] Post, p. 403.    [2] Post, p. 236.

bank, though acting in his individual capacity, is the only officer who has knowledge of the transaction, and under the rule recognized in the above-cited authorities his knowledge as an individual, under these circumstances, is not to be dissociated from his knowledge as an officer, and is imputable to the bank. Under the evidence in this case, any inquiry concerning any affair of the bank would naturally have been made of Rainer, who had full charge of the affairs, and notice thus acquired by him must be held as notice to the bank.

Marbury was not informed of Rainer's indebtedness to the bank, and of any lien upon the stock. If therefore the knowledge of Rainer is imputable to the bank, then, of course, upon the plainest principle of right and justice the bank must be held to have waived its lien. First Nat. Bank of Chattanooga v. Huntsville Bank & Trust Co., supra.

Indeed, as previously stated, we are persuaded this last-cited authority, and its companion case of First & Fourth Nat. Bank of Nashville v. Huntsville Bank & Trust Co., supra, are decisive adversely to appellee. These recent cases were relied upon by counsel for appellant in oral argument as well as in brief, and are without reference in brief of appellee. Upon principle those cases are not to be differentiated from the instant case, and we are of the opinion complainant is entitled to relief upon the first-stated theory of the bill.

The facts as here disclosed would also justify relief upon the second stated theory of exoneration, under the authority of Bank of Florale v. Amer. Nat. Bank, 199 Ala. 659, 75 So. 310, wherein is cited Tatum v. Commercial Bank, 193 Ala. 120, 69 So. 508, L. R. A. 1916C, 767, and which for all practical purposes would doubtless serve complainant's purpose. But, in view of our conclusion upon the first theory, we pretermit the second.

[2] It may be seriously questioned that there is sufficient proof in this record of any agreement to pay and intent to charge a usurious rate of interest (Nance v. Gray, 143 Ala. 234, 38 So. 916, 5 Ann. Cas. 55) in the transaction between Marbury and Rainer; but, however that may be, the case here presented is not one of bona fide purchaser, but merely a question of estoppel or waiver of a lien, and we are of the opinion that the question of usury is of no material importance.

We therefore conclude that appellant is entitled to relief and to a sale of the collateral of said 25 shares of stock, free from any lien of the respondent bank. The decree of the court below will be reversed, and one here rendered in favor of complainant, and the cause will be remanded to the court below for further necessary proceedings.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.