21 So.2d 686

## TENNESSEE VALLEY BANK v. WILLIAMS.

### 7 Div. 806.

Supreme Court of Alabama.

March 1, 1945.

Rehearing Denied April 12, 1945.

564

S. A. Lynne, of Decatur, for appellant.

Brown & Conway, of Albertville, and Scott & Dawson and A. E. Hawkins, all of Fort Payne, for appellee.

FOSTER, Justice.

Appellant, who was the plaintiff below, acquired the note sued on in a transaction with the First National Bank of Albertville, which was in financial embarrassment, whereby plaintiff purchased the note and many others in an over-night transaction, so as to cause little financial disturbance. They executed a contract conveying this note and others aggregating several hundred thousand dollars, and assumed liability to depositors with the aid of the Federal Deposit Insurance Corporation. The details are stated on the former appeal of this case. Tennessee Valley Bank v. Williams, 244 Ala. 468, 14 So.2d 368.

On the trial from which the present appeal was taken, there was additional evidence on the basis of which the issues were again submitted to a jury.

The chief matter in controversy on that trial as on the first, was whether the plaintiff was a holder in due course by indorsement as provided for in sections 51 and 33, Title 39, Code.

■ On this trial, it appeared without dispute that the indorsement of this and other notes occurred about a week after they were purchased by plaintiff. They were transferred by an instrument mutually executed, which was effectual for the purpose of a transfer. "The notes were in a metal note case and the contract was of course on top of the note case and they were delivered in that way." Section 33, Title 39, Code, provides that an "indorsement must be written on the instrument itself or upon a paper attached thereto." Section 51, Title 39, Code, is to the effect that when an instrument is payable to the order of the payee, he may transfer it without indorsing it, whereby the transferee acquires the rights of the transferor, and also the right to an indorsement by him, but that he is not a holder in due course until the indorsement is actually made.

The trial court held that the contract conveying the notes was not "written on the instrument itself or upon a paper attached thereto." This ruling was in harmony with our case of Clark v. Thompson, 194 Ala. 504, 69 So. 925.

The case of First National Bank of Bowie v. Bell, Tex.Civ.App., 88 S.W.2d 119, cited by appellant, is to a different effect. That case by the Court of Appeals of Texas is contrary to our case of Clark v. Thompson, supra, as well as those of other states. 56 A.L.R. annotations 921; 8 Amer.Jur. 53, 54, note 12; 10 Corpus Juris Secundum, Bills and Notes, § 207, p. 692. We find no authority which supports it.

■ The effect of the statute is that plaintiff could not become a holder in due course until there was an indorsement on the note as required by section 51, Title 39, Code. And of course he could not be a holder in due course under section 54, Title 39, Code, unless when he obtained an indorsement of the note it was without notice of the infirmity in the instrument which defendant set up as a defense, that its execution was obtained by fraud. And since the time of its negotiation for that purpose under section 51, supra, is the time when the indorsement is actually made, the absence of notice relates to that time, not the time when it was transferred without the indorsement having been made. So that if plaintiff acquired notice of the infirmity between the date of the transfer and the date of the indorsement, it is not in the status of a holder in due course, and is not protected as such against it.

The transaction by which the notes were acquired by plaintiff was at the banking house of the First National Bank at Albertville, over the night of August 11, 1937. The officers of the two banks and government representative worked all night. The next morning the bank opened under the ownership and possession of plaintiff, and proceeded in the usual course of business. Plaintiff's principal office was located at Decatur, with Mr. Cottingham there as its president, and he with Mr. Adams, the vice-president, negotiated for plaintiff the transaction at Albertville on the night of August 11th. It was fully completed that night and delivery made of the assets, except the physical act of indorsing the notes. There were so many of them a special rubber stamp was ordered for the job. It was not completed for about a week. The next day, August 12th, 1937, there was evidence that the cashier of the Albertville bank (Smith) saw defendant and learned for the first time that he had on June 11, 1937, bought from Irvin, the president of that bank, twenty shares of its stock, and gave his note to the bank for the money under an alleged fraudulent inducement. Smith was in default with the bank. Cottingham had been a bank examiner. Smith testified, that on the 12th of August at Albertville, at a time when Cottingham was "fixing to go to supper at the hotel," not transacting any business for the bank, and in order to show Cottingham that "there had been actual evidence the president was crooked, and I wanted to get his reaction," told Cottingham "how Irvin sold this stock by note," and, in the language of appellant's brief, "about Irvin having deceived and defrauded this country boy." It was not clearly stated to Cottingham that the note which defendant gave for the purchase of the stock was one of those which plaintiff had purchased. But there may be such an inference drawn. It does clearly appear that the conversation was not intended to affect the business of plaintiff bank, which was not then under discussion or negotiation. The business had been completed except the physical act of the indorsements. The conversation was said expressly not to impart information to the

bank, but to Cottingham personally, on account of the former relations between them, and to show that he alone was not responsible for the defalcation. In fact, Irvin, the president, later served a term of imprisonment for it.

Appellant contends that notice to Cottingham after the transfer was complete, but before there was a formal indorsement of the note, was not sufficient as notice to plaintiff, because (1) the transfer being complete, the note delivered and paid for, notice then could serve no useful purpose, whereas the law looks to practical results, and does not make merely formal declarations; and because (2) notice to Cottingham was personal, at a time when he was not engaged in performing any of his duties of office, and therefore it was not imputed to plaintiff.

The contract between the parties did not require the selling bank to indorse the note without qualification. When this note was indorsed, it was without recourse, which was a qualified indorsement, but did not impair the negotiable character of the note. Section 40, Title 39, Code. By a qualified indorsement, the seller guarantees among other things that it has a good title to the note, and has no knowledge of any fact which would impair the validity of the indorsement or render it valueless. Section 67, Title 39, Code. The title of a seller is defective if he obtained the instrument or any signature thereto by fraud, etc. Section 57, Title 39, Code. So that a qualified indorsement is a warranty that the execution of the note was not procured by fraud. Kennedy v. Hudson, 224 Ala. 17, 138 So. 282; 8 Amer.Jur. 266, et seq.; Bankhead v. Owen, 60 Ala. 457, 461.

It is noted that section 67, supra, refers to negotiating an instrument by delivery or a qualified indorsement. The question has been considered of whether negotiating here includes a transfer by delivery of an instrument payable to order. The cases hold in view of section 51, supra, by which the title to such an instrument passes by such a transfer, that section 67, supra, has application, though there is a transfer by delivery of an order paper. Queensboro National Bank v. Kelly, 2 Cir., 48 F.2d 574, 87 A.L.R. 1172, see page 1187; 8 Amer.Jur. 267, notes 7 and 8.

Liability for an implied warranty by a seller under the common law is very much like that expressed in section 67, supra, and that was apparently without reference to whether the negotiation by delivery was of an instrument payable to order. Bankhead v. Owen, 60 Ala. 457; 8 Amer.Jur. 268, notes 9, 10, 11, 12 and 13.

The contract entered into at the time of the delivery of the notes purported to sell, transfer and assign the notes to plaintiff and the selling bank agreed to execute all indorsements as may be proper to vest in plaintiff all its right, title and interest in them. This was certainly a transfer under section 51, supra, and by it the selling bank by section 67, supra, similar to common-law principles, warranted that the execution of the note was not procured by its fraud. Section 57, supra.

So that if plaintiff had notice before the transaction was fully completed that the note against defendant was obtained by the selling bank by the fraud of its president, plaintiff could have refused to accept the indorsement and charged the amount paid back to the account of the selling bank. If with such notice plaintiff accepted the indorsement of the note and claims it, plaintiff became a party to the bad faith of the selling bank, insofar as the rights of defendant are here concerned.

Appellant also contends that the notice to Cottingham, if it be such, was at a time when he was not engaged in business for the plaintiff nor in discussing its business affairs, but at a time when he and Smith were discussing personal matters not intended as information to plaintiff. This is on the theory that private individual knowledge of the officers of plaintiff, acquired in personal contacts as if he had no official relation to plaintiff, will not as a rule operate as notice to plaintiff. Bruce v. Citizens National Bank, 185 Ala. 221, 64 So. 82; Central of Georgia R. Co. v. Joseph, 125 Ala. 313, 28 So. 35; Reid v. Bank of Mobile, 70 Ala. 199. It is true that such information so acquired does not as a rule operate as notice as a matter of law, called constructive notice. When notice comes to an officer or agent in transacting the business of the principal in the scope of his authority, the constructive notice thereby drawn is conclusive. It is said to be so because in respect to the transaction of such business, the agent is for that purpose in law identified with his principal. But there is also a rebuttable presumption of actual knowledge by a principal on account of knowledge by an agent no matter when acquired, bearing upon the

 

subject matter of his agency, since it is the duty of such agent so to inform his principal, and it will be presumed, prima facie, that he discharged that duty. Whether he did so in fact is matter of proof in denial of the presumption. This latter presumption also depends upon the inferior presumption of fact that such knowledge was present in his memory during the execution of his agency at a later time. Hall & Brown Woodworking Mach. Co. v. Haley Furniture Co., 174 Ala. 190, 65 So. 726, L.R.A.1918B, 924; Williams v. Fundarburk, 237 Ala. 30, 185 So. 383; Sullivan v. Alabama Power Co., ante, p. 262, 20 So. 2d 224.

Assuming that Cottingham, though not the managing head of plaintiff's business, received notice of the infirmity while he was engaged in a personal conversation with Smith, not then relating to plaintiff's business conducted by him, it would be for the jury to determine on proper instructions from the court whether at some later time while engaged in his duties as president of the bank he then so advised its officer or agent who completed the transaction in finally accepting the indorsed note, since it would be his duty to do so, and it may therefore be found that he did it, since there is no evidence that he did not. Williams v. Fundarburk, supra; Lawrence v. Tennessee Valley Bank, 224 Ala. 692, 141 So. 664.

The evidence does not show that Cottingham as president had any more authority than that presumed by law. The president is not presumed to be the managing head of the bank's business. Ex parte Lamberth, 242 Ala. 165, 5 So.2d 622; Chemical National Bank v. Jackson, 214 Ala. 458, 108 So. 53. If the evidence shows that he is the managing head of its affairs, his knowledge whenever acquired is imputed to the bank as a matter of law and it is conclusive notice to it as of that time. Salmon v. Wheeler, 229 Ala. 263, 156 So. 584; Malone v. Merchants & Farmers Bank, 213 Ala. 215, 104 So. 758; Fourth & First National Bank v. Huntsville Bank & Trust Co., 213 Ala. 403, 104 So. 761; First National Bank v. Huntsville Bank & Trust Co., 213 Ala. 236, 104 So. 760; Tatum v. Commercial Bank & Trust Co., 193 Ala. 120, 69 So. 508, L.R.A.1916C, 767.

On that state of the evidence, the question of notice was properly submitted to the jury. There is no other question presented by appellant which seems to need discussion.

There being no reversible error, the judgment is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS and STAKELY, JJ., concur.