266 So.2d 756

**Sollie Lee BROCKWAY et al.**

v.

**UNITED STATES FINANCE COMPANY, Inc.**

1 Div. 687.

Supreme Court of Alabama.

Aug. 10, 1972.

Rehearing Denied Sept. 28, 1972.

Joe H. Little, Jr., Mobile, for appellants.

Perloff, Reid & Briskman, Mobile, for appellee.

PER CURIAM.

Sollie Lee Brockway and wife, Maxine, appeal from an adverse decree of the Circuit Court of Mobile County, in Equity, rendered in a declaratory judgment proceeding which they instituted against United States Finance Company, Inc., a Florida corporation.

The Brockways signed a written contract with Solmica of The Gulf Coast, Inc., relative to the building of a room by Solmica onto the Brockway home and payment by Solmica of the sum of $586 which the Brockways owed two loan or finance companies. This contract is dated August 12, 1964.

The contract specified that the Brockways would pay to Solmica for the addition to be made to their modest home and for the payents to be made to the two finance companies the total sum of $3,150, all of which was "to be financed and paid in (84) consecutive monthly instalments of _____ Dollars ($63.74) each, and every month after completion, until fully paid." There is no language in the contract stating that the difference between the sum of $3,150 and $5,354.16, the amount which the Brockways were to pay on a debt of $3,150 over a period of seven years, was because of the time differential

or that the sum of $3,150 less the $586 was the cash price and the sum of $5,354.16 less $586 was the time price. Nor is there any mention of interest in the contract.

On August 26, 1964, the Brockways signed a note wherein they promised to pay to Solmica the sum of $5,354.16 "in 84 consecutive monthly instalments of $63.74 each . . . the first to become due and payable on the *15th* 10th 20th 25th day of November . . . *1964*, balance of instalments to be paid on the same date of each month thereafter, . . ."

To secure the payment of that note the Brockways on August 26, 1964, executed a mortgage on their home at 1068 Etta Avenue, where the improvements were to be made. The mortgage recited that the Brockways had become "justly" indebted. to Solmica in the sum of $5354.16, "evidenced by a promissory note of even date herewith in total amount set forth above, payable in 84 monthly instalments in the sum of *Sixty three & 74/100* DOLLARS (63.74), the first payment commencing on the *1* day of November 1964, and continuing on the same day of each month thereafter until fully paid. . . ."

The note and mortgage were assigned by Solmica to "U. S. Finance Co., Inc." on September 10, 1964. On the same day that the assignments were made, September 10, 1964, United States Finance Company, Inc., issued three checks to Solmica, one in the amount of $546, another in the sum of $40 and the third for $2,564. Solmica retained the $2,564 check and delivered the two smaller checks to Brockway, who in turn used them to pay the finance companies.

The contract which the Brockways had entered into with Solmica shows that Solmica agreed to pay to "Liberty Finance Company" on behalf of the Brockways the sum of $546 and to "Mutual Finance Co." on their behalf the sum of $40. So the total amount which United States Finance Company, Inc., paid Solmica for the $5,-354.16 Brockways' note and mortgage was $3,150.

Sometime prior to November 1, 1964, United States Finance Company, Inc., notified Brockway by letter to the effect that his note payable to Solmica had been assigned to it; that the "Repayment Terms" were "84 months at $63.74" with the first payment due November 1, 1964.

The Brockways made fifty-eight payments of $63.74 each, totalling $3,696.32, prior to filing this declaratory judgment proceeding.

In their bill the Brockways alleged in part as follows:

"6. That the debt evidenced by said mortgage contains usurious interest in that the rate of interest on the principal sum advanced exceeds $8.00 upon $100.-00, for one year . . .

\* \* \* \* \* \*

"9. Complainants are informed and believe and upon such information and belief aver that Respondents contend that the debt secured by the mortgage made the basis of this suit does not contain usurious interest and that said mortgage is not satisfied; whereas the Complainants contend and aver that said debt does contain usurious interest; that the principal amount of said debt has been paid; and that the mortgage has been satisfied. Therefore, Complainants aver that a justiciable controversy exists between Complainants and Respondents."

The Brockways, the complainants, prayed in part as follows:

"FURTHER, your Complainants pray that, upon a final hearing of this cause, this Honorable Court will render a declaratory judgment and decree with the following relief:

"(a) That the Court construe the mortgage and [sic] made the basis of this suit along with the attending circumstances and determine whether or not the debt secured by said mortgage contains usurious interest."

The answer filed by the repondent, United States Finance Company, Inc., admits the averments of some paragraphs of the

bill, denies the averments of other paragraphs, and as to two paragraphs neither admitted nor denied their averments and demanded strict proof thereof. The answer denied the averments of paragraph 6 of the bill quoted above, but in regard to paragraph 9 of the bill said: "The respondent admits that there is a justiciable controversy between the parties hereto."

The Brockways were the only witnesses called. After they rested their case the respondent rested without calling a witness.

In its decree, which is not in the usual form of a declaratory judgment or decree, the trial court expressed "the *opinion* that the contract executed by the Complainants in this cause was for a cash price of $3,150.00 and for a credit price of $5,354.16 which is the total of 84 monthly installments of $63.74 and that the difference between the cash price of $3,150.00 and the total amount of the contract is the credit price and did not include any interest." (Emphasis supplied)

The court thereupon ordered, adjudged and decreed that:

". . . the balance due is $2,003.75 on the mortgage from the Complainants, Sollie Lee Brockway and Maxine Brockway, husband and wife, to Solmica of The Gulf Coast, Inc. which said mortgage has been assigned to the Respondent, United States Finance Company, Inc., said mortgage and assignment appearing in" etc.

From that decree and the decree overruling their "Motion for Rehearing" the Brockways appealed to this court.

In United Acceptance Corp. of Florida v. Joiner et ux., 280 Ala. 605, 607, 196 So. 2d 720, 722, this court said:

"The decisions of this court recognize both a credit price and a cash price. Also, we have held that an agreement fixing a credit price as distinguished from a cash delivered price is not usurious, though advance in price for credit was in excess of legal rate of interest on cash price. Commercial Credit Co. v.

Tarwater, 215 Ala. 123, 110 So. 39(4), 48 A.L.R. 1437; also, the law recognizes the right of a seller to fix the price on his commodity, and to make a cash price and a credit price, provided it is not a mere device to cover usury. Davis v. Elba Bank & Trust Company, 216 Ala. 632, 114 So. 211(13)."

But in Grider v. Calfee et al., 242 Ala. 50, 52, 4 So.2d 474, 475, it was said:

"The courts will closely scrutinize every suspicious transaction in order to ascertain its real nature. The law is diligent to discern any artifice, device or scheme to cover up usury. In determining whether the contract is tainted with usury, the court will look to the whole transaction. Lewis v. Hickman, 200 Ala. 672, 77 So. 46; Dawson v. Burrus, 73 Ala. 111; Uhlfelder v. Carter's Adm'r, 64 Ala. 527. It will consider the surrounding circumstances, the occurrence at the time of the making of the agreement, and the instruments drawn. The court will look to and construe the transaction by its substance and effect rather than its form, and if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the plain duty of the court is to inflict the penalty imposed by the statute."

To like effect see Cochran v. State ex rel. Gallion, 270 Ala. 440, 119 So.2d 339, and Koons v. Alabama City Bank of Gadsden, 285 Ala. 364, 232 So.2d 611.

There is nothing in the record to justify an "opinion," finding or conclusion that "the difference between the cash price of $3,150.00 and the total amount of the contract [$5,354.16] is the credit price and did not include any interest."

■ On the other hand, there is nothing to show that the difference between the sum of $3,540 and $5,354.16 is interest.

In 91 C.J.S. Usury § 114, p. 698, it is said:

"Generally speaking, usury will not be presumed; indeed, in the absence of evi-

dence to the contrary, there is a strong presumption in favor of the legality of the transaction and the absence of usury, and the party who alleges or asserts that a transaction is usurious has the burden of proving such assertion. . . ."

In Porter v. Porter, 244 Ala. 132, 12 So. 2d 186, this court held, in effect, that in an action on a note which was not usurious on its face, defendant had the burden of supporting his plea of usury.

On the other hand, this court has said, in effect, that the evidence introduced may be such as to cast on the lender the burden of introducing explanatory evidence. In Blue v. First National Bank of Elba, 200 Ala. 129, 131, 75 So. 577, 579, we said:

"We recognize the rule that a party is under no obligation to prove the case of his adversary and that a party on whom there is no burden of proof may, and frequently does, rest his case upon the weakness of his adversary's evidence. In the present case appellee's original contract with appellant was certainly usurious. The operations by which the transmutations of the debt were effected bear such persuasive indications that all along they were under the entire control of appellee or its officers—badges of fraud, they may not inaptly be termed— that the burden of explanation was cast upon appellee. . . ."

If it was respondent's position that the $5,354.16 figure represented the credit price as distinguished from a cash price of $3,150, it is our opinion that under the circumstances of this case the burden was on the respondent to introduce explanatory evidence in support of that position.

The fact that the respondent issued the three checks on the day the note and mortgage were assigned to it tends to show that it had knowledge of the terms of the contract. As previously shown, the three checks totalled $3,150, but one of them was for $546 and another for $40, the amounts specified in the contract to be paid by Solmica to the finance companies on behalf of the Brockways.

The sum of $586 included in the contract appears, without explanation, to have been simply a loan. It was included in the $3,150 amount. Could a so-called time price be computed on the $586? Any charge for the use of that sum appears to be interest, in the absence of explanation.

The difference between $3,150 and $5,354.16 is $2,204.16, almost the exact amount, just eighty-four cents less, than a charge of ten percent on $3,150 for seven years when computed by the "add-on" interest method used in financing. That amount would represent approximately sixteen percent simple interest as it is usually computed.

The transaction out of which this litigation arose occurred prior to the adoption of the Uniform Commercial Code. However, the $2,204.16, *supra,* would be usurious under that law or the law in force at the time.

■ We do not hold that the trial court erred in not declaring that the debt evidenced by the mortgage contains usurious interest. We do hold, however, that the court erred in declaring, in effect, that the sum of $2,204.16 previously mentioned was the difference between a cash price and a credit price because there is no evidence to support such a finding or "opinion."

We will not go into the matter as to whether the respondent was a holder in due course. The trial court did not reach that question and we will not attempt to do so on this record. The record as we read it does not support the following construction placed upon it in appellee's brief: "Since there is evidence to support the conclusions of the chancelor (sic) that the appellee is a holder in due course the decree must be affirmed." We do not find any such conclusion or finding in the trial court's decree.

The rule that there is a presumption in favor of a trial court's finding of fact where evidence is taken ore tenus has no application to this appeal.

The decree of the trial court is reversed and the cause is remanded.

The foregoing opinion was prepared by THOMAS S. LAWSON, Supernumerary Associate Justice, and was adopted by the Court as its opinion.

Reversed and remanded.

MERRILL, HARWOOD, BLOOD-WORTH, MADDOX, McCALL and SOMERVILLE, JJ., concur.

HEFLIN, C. J., and COLEMAN, J., dissent.

HEFLIN, Chief Justice (dissenting):

The bill of complainant and the evidence showed that the appellee-respondent United States Finance Co. was assigned a negotiable promissory note and thereby became the owner and holder of it. Every holder of such a note is deemed prima facie to be a holder in due course; i. e., he is deemed to have taken it before maturity in good faith and for value, having at the time no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Sections 54 and 61 of Title 39, Code of Alabama, 1940. Bruce v. Citizens' National Bank, 185 Ala. 221, 64 So. 82; Tennessee Valley Bank v. Williams, 244 Ala. 468, 14 So.2d 368.

In light of this presumption and the judgment of the trial court in favor of the United States Finance Co., the absence of a finding by the trial court that the United States Finance Co. was a holder in due course is immaterial. Further, the provisions of § 65 of Title 9 of the Code of Alabama, 1940, (that usury may not be a defense against a holder of any negotiable instrument in due course) are applicable.

Although my sympathies lie with the appellees-complainants Brockways in the instant case, I, nevertheless, am compelled by the law of this State to vote to affirm the decision of the lower court. Therefore, I respectfully dissent.

COLEMAN, J., concurs.